(No. 20416.—

THE CITY OF CHICAGO, Appellee, *vs.* THE WONDER HEATING AND VENTILATING SYSTEMS, Inc., Appellant.

*Opinion filed October 23, 1931.*

FRANK W. STEEL, for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, and FRANK PESKA, City Prosecutor, (GEORGE SUGARMAN, and RANSOM E. WALKER, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

The city of Chicago, appellee, brought suit in the municipal court of Chicago against the Wonder Heating and Ventilating Systems, appellant, to collect a penalty for the violation of section 5 (K-1) of a city ordinance governing the installation of gravity warm air heating plants. Appellee's statement of claim alleged that appellant on October 24, 1929, installed seven warm air furnaces, at addresses therein specified, without permits and in violation of said section. Appellant filed a written motion to strike the statement of claim from the files and dismiss the suit on the ground that the ordinance was unconstitutional, which motion was overruled, after which appellant entered a plea of not guilty. A jury was waived, and on the trial appellant admitted the allegations in the statement of claim

but denied the validity of the ordinance sued on and section 5 (K) thereof. The court found against appellant and assessed a fine of $100. The court certified that the validity of a municipal ordinance was involved, and an appeal was taken to this court.

The ordinance was passed in 1927 and is entitled "An ordinance governing the installation of gravity warm air heating plants." In 1928 it was amended. The ordinance as amended defines gravity warm air heating plants. It sets out at some length directions and specifications to be complied with in the installation of such plants in new buildings and buildings already constructed. Section 5 (K-1) is as follows: "It shall be unlawful for any person, persons, firm or corporation to construct, replace or install any warm air heating furnaces or appurtenances thereto within the city of Chicago without first obtaining from the commissioner of buildings a permit to do such work, for which said person, persons, firm or corporation shall pay to said commissioner of buildings, for the use of said city, for each furnace installed, renewed or repaired, the sum of five dollars ($5.00)." The same section (K-2) provides that no permits shall be required for minor repair work, but that when additional runs or new stacks are installed, permits costing one dollar are required. That section (L) also provides for the inspection of warm air furnaces and appurtenances by the commissioner of buildings, the expenses thereof to be paid out of the fees received for permits. Sections 6 to 9 require every person, firm or corporation engaging in the business of installing such plants to register with the commissioner of buildings, give bond and pay an annual registration fee. Section 12 is as follows: "Any person, firm or corporation that shall engage in the business of a warm air furnace heating and installing contractor without obtaining a certificate of registration as herein provided for, or that shall violate any of the provisions of this ordinance, shall be fined not less than fifty

dollars ($50) nor more than two hundred dollars ($200) for each offense, and a separate and distinct offense shall be regarded as committed every day on which such person, firm or corporation shall continue to operate contrary to the provisions of this ordinance."

A municipal corporation is a creature of the legislature. It derives its existence and powers from the General Assembly. It possesses no inherent power. In order to legislate with reference to a particular subject or occupation such a corporation must be able to point out the statute which gives it the power to do so. A statute which grants powers to a municipal corporation is strictly construed and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality. The implied powers which a municipal corporation possesses and may exercise are those necessarily incident to the powers expressly granted. (*Crerar Clinch Coal Co.* v. *City of Chicago,* 341 Ill. 471; *City of Chicago* v. *Northern Paper Stock Co.* 337 id. 194; *Elsenau* v. *City of Chicago,* 334 id. 78.) In this case but one issue is raised, namely, the validity of section 5 (K) of the ordinance. If it appears that this section is authorized by law it is apparent that it is within the power of the municipality to fix a penalty for its violation. (Smith's Stat. 1929, chap. 24, par. 65, sec. 101.)

Section 63 of article 5 of the Cities and Villages act empowers the city council "to prevent the dangerous construction and condition of chimneys, fireplaces, hearths, stoves, stove-pipes, ovens, boilers, and apparatus used in and about any building and manufactory, and to cause the same to be removed or placed in a safe condition, when considered dangerous; to regulate and prevent the carrying on of manufactories dangerous in causing and promoting fires; to prevent the deposit of ashes in unsafe places, and to cause all such buildings and enclosures as may be in a dangerous state to be put in a safe condition." The obvious purpose of this section is to authorize the passage

of ordinances designed to prevent fire and to regulate the installation and maintenance of heating apparatus of the kind and character therein specified. In *City of Chicago* v. *Pettibone & Co.* 267 Ill. 573, this court held that this section was designed to prevent conditions that are liable to cause fires. In *Williams* v. *City of Chicago,* 266 Ill. 267, under section 63 and other sections, this court held that a city has the power to enact an ordinance requiring the installation in apartment buildings of certain fire extinguishing equipment. In *City of Chicago* v. *Washingtonian Home,* 289 Ill. 206, it was held that a city had authority to enact an ordinance requiring the equipping of certain buildings with an approved automatic sprinkler system for fire prevention.

Section 66 of article 5 of the Cities and Villages act empowers the city council to regulate the police of the city and pass and enforce all necessary police ordinances. This section does not give unlimited police power to the city but authorizes the exercise of this power only to make effective the powers expressly given. (*Arms* v. *City of Chicago,* 314 Ill. 316.) The health, safety, welfare and comfort of the population of cities and villages are proper subjects for the exercise of the police power, and under delegation of the power from the State they may regulate any occupation or business the unrestricted pursuit of which might injuriously affect the public. (*Village of Westville* v. *Rainwater,* 294 Ill. 409.) It is within the police power of a city to regulate the construction and use of buildings for the protection of the lives and safety of citizens, as well as their property, against destruction by fire. If the requirements of an ordinance having this end in view are adapted to that purpose, a court cannot interfere with their enforcement unless they are manifestly unreasonable. *Hartman* v. *City of Chicago,* 282 Ill. 511.

In *Klever Karpet Kleaners* v. *City of Chicago,* 323 Ill. 368, the validity of an ordinance licensing and regulating

the business of dry-cleaning was involved. It was contended that the ordinance was invalid because the legislature had given the city no authority to enact an ordinance licensing and regulating a dry-cleaning business. It was held that the express powers to guard against fire, to prevent dangerous constructions, to regulate and prevent the carrying on of manufactories dangerous in promotion of fires, to cause all dangerous buildings to be made safe, to provide fire prevention equipment and the use of the same, to regulate and prevent storage of gunpowder, tar, pitch, resin, coal oil, benzine, turpentine, hemp, cotton, nitroglycerine, petroleum and other combustible or explosive material, and to enforce all necessary police ordinances, carried with them by implication the power to pass the ordinance in question.

Appellant cites a number of cases to sustain its contention that the ordinance governing the installation of these heating plants was not specifically or by implication authorized by the legislature. None of the cases cited, except *Arms* v. *City of Chicago, supra,* consider section 63 of article 5 of the Cities and Villages act in determining whether the ordinance is authorized, and consequently are not in point. In *Arms* v. *City of Chicago, supra,* an ordinance creating a commissioner of gas and electricity, requiring the licensing of electricians, furnishing of bonds, obtaining of permits before starting installations and making of certain inspections, and providing penalties for noncompliance, was held invalid because there was not at that time any act of the legislature under which the city had authority to pass such an ordinance. Section 63 of article 5 of the Cities and Villages act was considered, but the court held that this section furnished no authority for that ordinance. The facts of that case, however, distinguish it from the present case.

Counsel for appellant contends that the ordinance is discriminatory in its nature. That is not true. It operates

uniformly on the class of business it seeks to regulate. It makes a classification of dealers in gravity warm air heating plants, which does not appear *per se* to be unreasonable. The section of the ordinance here considered operates uniformly on everyone who constructs, replaces or installs any warm air heating furnace or appurtenances thereto within the city of Chicago. There is nothing objectionable in this. *Perry* v. *City of Chicago,* 320 Ill. 536.

Requiring a permit costing five dollars for the construction, replacement or installation within the city of Chicago of such a furnace does not on its face appear so unreasonable as to make the ordinance invalid, nor is there any contention on the part of the appellant that this amount is excessive. A court will not hold an ordinance void as unreasonable where there is room for a fair difference of opinion on the question. *Hartman* v. *City of Chicago, supra.*

Appellant contends that the ordinance is void because section 6 discriminates between resident and non-resident contractors of Chicago, and that section 5 (L-1), which provides that the expense of inspection shall be paid out of the permit fees, is repealed by the current appropriation ordinance of the city, which makes provision for the salary of the inspectors. There is no merit in either of these contentions.

Sections 63 and 66 of article 5 of the Cities and Villages act furnish sufficient authority to appellee to enact section 5 (K) of the ordinance.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*