THE KLEVER SHAMPAY KARPET KLEANERS, Inc., Appel-lant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 28, 1926—Rehearing denied Dec. 9, 1926.*

1. MUNICIPAL CORPORATIONS—*a city possesses only the powers granted or necessarily implied.* A municipality possesses only such powers as the legislature has expressly conferred upon it or such as are necessarily incident to powers expressly granted.

2. SAME—*a city may regulate the dry cleaning business.* The business of dry cleaning creates greater danger of fire than other businesses using large quantities of inflammable liquids and justifies a reasonable ordinance classifying it as a special subject of regulation to prevent fires, as a necessary incident to the exercise of powers expressly conferred upon a municipality.

3. SAME—*general rule as to when city has power to require a license.* While a city has no inherent power to license any occupation or exact a license fee from any person, it may do so under a power expressly granted or as a necessary incident to such power, and the power to adopt a licensing ordinance will necessarily be implied wherever the regulation of certain conditions affecting public safety has been delegated to the city and the efficient regulation of such conditions as affected by a particular business requires that the business be controlled by a licensing ordinance.

4. SAME—*what must be shown to justify ordinance requiring license in exercise of police power.* To justify an ordinance requiring a license to engage in a particular occupation as a proper exercise of the police power it must appear that the requirement of a license tends to promote the public health, safety or welfare.

5. SAME—*under the police power a city may regulate storage of combustible materials.* It is clearly within the police power of a city to provide by ordinance for the regulation and prevention of the storage of coal oil, naphtha, benzine, petroleum, or any of the products thereof, and other combustible or explosive materials.

6. SAME—*method of regulating construction and use of buildings to prevent fire is primarily for city council.* If the requirements of an ordinance regulating the construction and use of buildings for the protection of the lives and safety of citizens as well as their property against fire are adapted to the purpose of securing such protection, courts cannot interfere with the enforcement of such ordinance unless it is manifestly unreasonable, and the extent to which the public safety requires the construction of build-

ings and the conduct of business therein to be regulated, and the method of such regulation, are questions primarily for the city council to determine.

7. SAME—*when court will not hold ordinance unreasonable.* A court will not hold an ordinance void as unreasonable where there is room for a fair difference of opinion upon the question, even though the correctness of the legislative judgment may be doubtful and the court may regard the ordinance as not the best which might be adopted for the purpose.

8. SAME—*what provision of ordinance regulating dry cleaning business is unreasonable.* A provision of an ordinance of the city of Chicago regulating the business of dry cleaning, which requires the building in which such business is conducted to be detached fifty feet from any other building is unreasonable.

9. SAME—*when equity will not enjoin enforcement of an ordinance—mandamus.* Equity will not enjoin the enforcement of an ordinance attempting to regulate a business which is a proper subject of regulation merely because a portion of the ordinance is void, as the complainants, on complying with the valid portion of the ordinance, would be entitled to *mandamus* to compel the city to permit them to carry on the regulated business without complying with the void provision.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

SCHUYLER, ETTELSON & WEINFELD, for appellant.

FRANCIS X. BUSCH, Corporation Counsel, (ROY S. GASKILL, ALBERT H. VEEDER, and W. ARNOLD AMBERG, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal prosecuted by the Klever Shampay Karpet Kleaners, a corporation, from a decree of the superior court of Cook county dismissing for want of equity a bill filed by the appellant in behalf of itself and all others similarly situated, against the city of Chicago, its mayor and superintendent of police, for an injunction against the

323—24

enforcement of an ordinance for licensing and regulating the business of dry cleaning and against interference with the appellant in constructing and maintaining on its premises the building and equipment for carrying on the business of dry cleaning.

The ordinance, which is article 13 of chapter 31 of the Chicago municipal code of 1922, consisting of sections 1412 to 1421 inclusive, was enacted July 22, 1912. Section 1412 declares it unlawful for any person, firm or corporation to carry on within the city of Chicago· dry cleaning or spotting in which gasoline, naphtha, benzine or other volatile oils are used to clean or renovate clothing or fabric of any kind, without obtaining a license for that purpose. Every person, firm or corporation keeping or using more than two quarts of gasoline, naphtha, benzine or other volatile oils for the purposes mentioned, for profit or reward, is defined as a dry cleaner, and every person, firm or. corporation keeping or using two quarts or less of such oils for the purposes mentioned, for profit or reward, is declared to be a spotter.

The amended bill alleged that the appellant had since March 22, 1924, carried on a general cleaning and dyeing business otherwise than by the dry cleaning method; that it had made plans for the reconstruction and remodeling of its building, upon which it had a lease expiring in 1934, to be used in the dry cleaning process, and that the proposed reconstruction and remodeling were in accordance with the requirements of a general comprehensive city ordinance governing the storage of gasoline, benzine, naphtha and other inflammable liquids; that the appellant had presented to the commissioner of buildings of the city, plans for the alteration of its building and business and applied for a permit to make the alteration and to conduct the dry cleaning business, but the permit was refused solely on the ground that the benzine building which the appellant proposed to construct according to its plan was not detached at least

fifty feet from any other building or structure or the line of adjoining property which might be built upon, and the defendants threatened to arrest and imprison the appellant's employees if the appellant proceeded to operate and maintain the dry cleaning business in its building without a compliance with the dry cleaning ordinance. The amended bill alleged the city council had never received authority from the legislature to regulate the business of dry cleaning; that while it had been given the power to regulate the storage of inflammable liquids, it could do so only by general ordinance applicable to all users thereof, and the ordinance complained of arbitrarily singles out dry cleaners for regulation, while other businesses using the same inflammable liquids in larger quantities and under more dangerous conditions are unregulated. It was further alleged that on November 22, 1922, the city enacted a comprehensive ordinance relative to the storage and use of inflammable liquids, based upon scientific principles and applying equally to all users of such liquids; that the appellant has fully complied with that ordinance and all other valid ordinances of the city; that the only material provisions in the dry cleaning ordinance which are not contained in the general ordinance are those requiring that every building in which dry cleaning is carried on shall be detached at least fifty feet from any other building or from the line of adjoining property which may be built upon. That provision is in paragraph (*b*) of section 1416, which also provides that the use of any building not exceeding three stories in height, in which a dry cleaning business was carried on prior to July 22, 1912, may be continued if such building complies in all other respects with the provisions of the ordinance, and that the use of any building in which a dry cleaning business was carried on prior to July 22, 1912, may be continued where such building is separated from all other buildings by a fire wall, with no openings into any adjoining building. The bill alleged that this provision is unreasonable and void and

tends to foster a monopoly, in that its essential provisions apply only to persons who had gone into the dry cleaning business after July 22, 1912, while those engaged in the business prior to that date were exempted from compliance with the ordinance. Other sections of the ordinance contain provisions regulating the conduct of the dry cleaning business and the construction, maintenance and inspection of the buildings in which such business is conducted. The bill alleged there were seventy-five or eighty dry cleaners in the city in a situation similar to that of the appellant, and they are threatened with arrest and prosecution by the city, and some actions have been already instituted against some dry cleaners for violating said ordinance; that the city insists on enforcing the fifty-foot requirement of paragraph (*b*) of section 1416, and a multiplicity of suits is threatened. It is also alleged that the appellant has invested a large sum of money in building up a valuable and permanent business, and unless the city is enjoined from interference with it the appellant will suffer irreparable damage to its business.

A demurrer to the amended bill was overruled. The appellees answered the bill, and on April 6, 1925, a temporary injunction was granted for ten days and the cause was referred to a master to take the proof and report his conclusions of law and fact. Orders were entered from time to time continuing the injunction in force until May 11, 1925, when it was ordered that the injunction remain in force until the further order of the court. The appellees appealed from the interlocutory injunction order to the Appellate Court. The master proceeded to hear and report the evidence with his finding that the dry cleaning ordinance was unconstitutional and void and a recommendation that the temporary injunction be made permanent, and on October 13, 1925, a final decree was entered making the injunction permanent. On October 21 the Appellate Court reversed the order for an interlocutory injunction, and on

November 10, 1925, the superior court allowed a motion previously made by the appellees and continued to that term to vacate the decree of October 13 and entered a decree dismissing the bill for want of equity. This appeal is prosecuted from that decree.

The first contention of the appellant is that the city had no authority from the legislature to enact an ordinance licensing and regulating a dry cleaning business. It is well settled and generally understood that a municipality possesses only such powers as the legislature has expressly conferred upon it or such as are necessarily incident to the powers expressly granted, and no authority need be cited upon that question. In the various sub-sections of paragraph 65 (Smith's Stat. 1925, p. 312,) will be found no express power conferred upon municipalities to license and regulate the dry cleaning business. Express powers are conferred upon municipalities to guard against fire, prevent dangerous constructions and to regulate and prevent the carrying on of manufactories dangerous in promotion of fires, to cause all dangerous buildings to be made safe, to provide fire prevention equipment and the use of the same, to regulate and prevent storage of gunpowder, tar, pitch, resin, coal oil, benzine, turpentine, hemp, cotton, nitro-glycerine, petroleum, and other combustible or explosive material, and to enforce all necessary police ordinances.

The powers conferred on municipalities by the Cities and Villages act to prevent fires and to regulate the construction of buildings and the handling and storage of inflammable materials would authorize the passage of the dry cleaning ordinance if the establishment and conduct of that business created greater dangers of fire than the storage and handling of those liquids in other lines of business. John Plant, chief of the bureau of fire protection, testified, and the master found, that dry cleaning as conducted creates danger of fires. He testified there were more fires in dry cleaning establishments than in any other business where

large quantities of inflammable liquids are used. The record warrants the conclusion that the business creates greater danger of fire than other businesses using large quantities of inflammable liquids and justifies classifying the dry cleaning business as a special subject of regulation to prevent fires, and the power to adopt reasonable and proper ordinances for that purpose is a necessary incident to the exercise of the powers expressly granted. The fact, if it is a fact, as contended by the appellant, that many of the provisions of the general ordinances upon the subject of the use of large quantities of inflammable liquids are similar to the dry cleaning ordinance cannot affect the validity of the latter.

While a city has no inherent power to license any occupation or exact a license fee from any person, it may do so under a power expressly granted to it by the legislature or necessarily incident to a power so granted. In order to justify an ordinance requiring a license to engage in a particular occupation as a proper exercise of the police power it must appear that the requirement of a license tends to promote the public health, safety or welfare. (*Wilkie* v. *City of Chicago,* 188 Ill. 444; *Village of Westville* v. *Rainwater,* 294 id. 409.) Where the power is not directly granted it need not be absolutely indispensable but it must be reasonably necessary to make effective a power expressly granted. (*Potson* v. *City of Chicago,* 304 Ill. 222.) If the regulation of certain conditions affecting the public safety has been delegated to a city and the efficient regulation of such conditions requires the conduct of a business peculiarly affected by them to be controlled by the limitations of a licensing ordinance, the power of the city to adopt such an ordinance will be necessarily implied. It is clearly within the police power of the city to provide by ordinance for the regulation and prevention of the storage of coal oil, naphtha, benzine, petroleum, or any of the products thereof, and other combustible or explosive ma-

terial. (*Standard Oil Co.* v. *City of Danville,* 199 Ill. 50.)
Such regulation may properly include the provision of meth-
ods of installation and use of tanks for the handling and
storage of volatile inflammable liquids therein, pumps or
devices for the removal and conveyance of the contents of
such tanks, and where, in a building in which such liquids
are stored, a business is conducted in connection with which
such liquids are used, the regulation may include provision
for the lighting and ventilation of the building, the manner
of construction, and may require the persons in charge of
such volatile inflammable liquids and of the handling and
using thereof and of the room in which and the equipment
with which they are used, to be competent persons, and may
provide for the examination of such persons and the inspec-
tion of the places, instrumentalities, methods and means of
storing and using such volatile inflammable liquids. The
ordinance in question contained provisions of this character.

If the requirements of an ordinance regulating the con-
struction and use of buildings for the protection of the lives
and safety of citizens as well as their property against fire
are adapted to the purpose of securing such protection, the
court cannot interfere with their enforcement unless they
are manifestly unreasonable. The extent to which the pub-
lic safety requires the construction of buildings and the
conduct of business therein to be regulated and the method
of such regulation, where such regulation is committed by
the legislature to a city, are questions which are left to the
judgment and discretion of the city council to determine,
and unless the exercise of such judgment and discretion is
manifestly unreasonable the courts will not interfere with
it. A court will not hold an ordinance void as unreason-
able where there is room for a fair difference of opinion
on the question, even though the correctness of the legisla-
tive judgment may be doubtful and the court may regard
the ordinance as not the best which might be adopted for
the purpose. *Hartman* v. *City of Chicago,* 282 Ill. 511;

*City of Chicago* v. *Mandel Bros.* 264 id. 206; *City of Chicago* v. *Washingtonian Home,* 289 id. 206.

We are of opinion the dry cleaning ordinance is valid, except the provision requiring the building to be detached fifty feet from any other building. That provision of the ordinance is unreasonable. It would be absolutely prohibitive against maintaining the business in the city if all such establishments were required to conform to the fifty-foot restriction.

The appellant contends that the proper remedy is by injunction; that where an entire ordinance is void and many persons are threatened with attempted enforcement of it, a court of equity may, to avoid a multiplicity of suits, enjoin the enforcement of the ordinance. In our opinion the case is not one for the exercise of the powers of a court of equity. The whole ordinance is not void, but only paragraph (*b*) of section 1416 is invalid. The situation is not essentially different from the situation in *Grace Church* v. *City of Zion,* 300 Ill. 513, except that in that case the bill did not allege there was any prosecution threatened of suits against others than the complainant. Workmen for Grace Church had been arrested, released on bail, and when they returned to work on the building were again arrested and put in jail. The lower court sustained a demurrer to the bill and dismissed it for want of equity. This court affirmed the decree and held Grace Church had a complete and adequate remedy at law by *mandamus.*

If appellant complies with the valid provisions of the ordinance it is entitled to a permit from appellees, and if such permit is not granted *mandamus* affords a clear and adequate remedy. *Grace Church* v. *City of Zion, supra; Pittsburgh, Fort Wayne and Chicago Railway Co.* v. *City of Chicago,* 159 Ill. 369; *People* v. *Busse,* 231 id. 251.

The decree dismissing the bill is affirmed.

*Decree affirmed.*