(No. 18721.—

G. D. MELTON *et al.* Appellants, *vs.* THE CITY OF PARIS *et al.* Appellees.

*Opinion filed December 20, 1928.*

WILBER H. HICKMAN, and G. F. BENNETT, for appellants.

F. C. VANSELLAR, City Attorney, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellants, G. D. Melton and Pete Young, filed their bill in the circuit court of Edgar county against appellees, the city of Paris, Illinois, and its officers and agents, to enjoin them from enforcing a wheel tax ordinance on the ground that it is illegal, void, unconstitutional and unreasonable; that it is not in force and effect; that the newspaper in which it was published was not the official newspaper of the city. Upon a hearing the bill was dismissed for want of equity, and an appeal has been prosecuted to this court.

The cause was tried upon a stipulation and certain documentary evidence. The evidence shows that the city is under the commission form of government. On July 25, 1927, the city council passed the ordinance in question. On July 28, 1927, it was published in the *Paris Daily News,* a newspaper which had been designated as the official newspaper of the city in May, 1923. On August 22, 1927, a petition purporting to be signed by more than ten per cent of all the electors who voted for mayor at the last preceding city elec-

.tion was presented to the city council praying that the ordinance be repealed, or, in the event that it was not repealed, that it be submitted to a vote of the electors of the city at a general or special election. On August 26, 1927, objections to the petition were filed with the city clerk on the ground that it was not addressed to the proper person, as provided by law; that it did not contain the required number of signatures; that each sheet contained a defective affidavit; that the caption failed to show that the signers were qualified to vote and the affidavit attached did not comply with the statute; that the dates were not written in by the persons signing the petition; that the street addresses and house numbers were incorrect; that the petition was not properly filed. On August 29, 1927, the petition and the objections thereto were filed with the clerk of the circuit court of Edgar county. They were presented to a judge of the circuit court, who noted thereon the date he would hear the case, which was not less than five nor more.than ten days after the presentation. The judge ordered five days' notice to be given by the clerk in a daily newspaper published in the city. Upon the date set for the hearing the judge heard the objections in vacation and entered a decree as in chancery, in which he held that the petition was not in accordance with the provisions of the statute; that the objections were sustained; that the ordinance was in full force and effect; that it was reasonable and that the city council had power to enact it; that the petition was not sufficient to require the city to repeal the ordinance or call an election to vote upon it. A certified copy of this decree was immediately sent to the city clerk.

The decree entered in this case found the facts substantially as above stated; that the decree entered by the circuit judge was binding; that it relieved the city from the obligation of repealing the ordinance or calling an election thereon; that the ordinance was not suspended from operation by the filing of the petition but was in full force

and effect; that it was not unreasonable and void because of the failure to make proper classification of vehicles; that the fees fixed were not unreasonable, excessive or void; that the fund derived from the fees was to be used for the repair of streets and alleys; that the penalty provided in the ordinance for its violation was reasonable; that the ordinance was not unconstitutional. The bill was dismissed for want of equity at appellants' cost.

As grounds for reversal it is insisted that when the petition was filed it was the duty of the city council to either repeal the ordinance or submit it to a vote of the people, as provided in section 48 of the statute on commission form of government; that this section was mandatory upon the city council; that it did not confer jurisdiction upon the circuit judge to inspect the petition filed by the electors; that the circuit judge in vacation erroneously held that the circuit court had jurisdiction of the subject matter and entered a decree declaring the ordinance in force and effect; that the decree was entered without jurisdiction and its entry did not relieve the suspension of the ordinance; that it was stipulated that an instrument bearing the signatures of more than ten per cent of all the electors was presented to the city council, which stipulation admitted the sufficiency of the petition and that the prayer of the petition should have been granted.

Section 48 of the statute on commission form of government (Cahill's Stat. 1927, p. 376,) provides that no ordinance, except when otherwise required by the general laws of the State or by the provisions of the act, shall go into effect before thirty days from the time of its final passage, and if during said thirty days a petition signed by the electors of the city equal in number to at least ten per cent of the entire vote cast for all candidates for mayor at the last preceding general election at which a mayor was elected, protesting against the passage of such ordinance, be presented to the council, the same shall thereupon be suspended

from going into operation, and it shall be the duty of the council to reconsider such ordinance, and if the same is not entirely repealed the council shall submit the ordinance, as provided in sub-section (*b*) of section 47 of the act, to a vote of the electors of the city. Said petition shall be in all respects in accordance with the provisions of section 47 of the act except as to the percentage of signers. Section 47 provides that the signatures, verification, authentication, inspection, certificate and submission of the petition shall be the same as provided in section 42 of the act. Section 42*c* provides that the petition shall consist of sheets signed by electors in their own proper person only, and opposite the signature of each petitioner shall be written by such person the street and number of his residence, if there be such, and the date of signing the same. At the bottom of each sheet shall be added a statement signed by a resident of the city in which the signers thereof reside, stating that the signatures on the sheet were signed in his presence on the dates set opposite the respective names, that the same are genuine, and to the best of his knowledge and belief the persons so signing were, at the time of signing, qualified electors and their respective residences are correctly stated as set forth on such sheet. Such statement is to be under oath. Section 42*f* provides that all objections to such petition shall be filed with the clerk with whom such petition was filed, within five days after the filing of the same, and if objections are filed against such petition as aforesaid, then at the expiration of five days the petition, together with all objections thereto, shall by such clerk be immediately filed in the office of the clerk of the county or circuit court of the county in which the city is situated. Authority and jurisdiction are conferred upon the county court or the judge thereof in vacation, or the circuit court or the judge thereof in vacation, to determine in a summary manner the sufficiency of the petition, and the decision, decree or judgment thereon·of any such court or judge as aforesaid shall

become immediately effective, and no appeal or writ of error shall in any manner stay or prevent the immediate operation of such decision, decree or judgment. The clerk of the court with whom such petition is filed shall immediately upon filing of the same with him present the same to the judge thereof, who shall note thereon the day the same was presented and the day when he will hear the same, which shall not be less than five nor more than ten days thereafter, and he shall order five days' notice thereof to be given by publication in some newspaper published in the city. The court or judge shall ascertain and declare by a decree as in chancery, to be entered of record in the proper court, the sufficiency or insufficiency of such petition, and the clerk of the court shall immediately upon said decree being entered transmit to the clerk with whom the petition was originally filed, such petition and a certified copy of the decree and the order of the court or judge.

It is not contended by appellants that these sections of the statute are unconstitutional. It is contended that section 48 is mandatory and fails to confer jurisdiction on the circuit judge to inspect the petition. Section 48 does not confer jurisdiction on the circuit judge to inspect the petition, but section 47 specifies the manner in which the petition shall be signed and verified, and section 42 provides a method for testing the validity of the same. The three sections are so connected by reference that each must be considered as part of the other. It is not contended that there was a failure to comply with the provisions of these sections. Even if there were such a contention, the record shows that the sections were complied with at the time and in the manner therein specified.

It is contended that under the stipulation it was agreed that an instrument bearing the signatures of more than ten per cent of the legal voters was filed with the city clerk requesting that the ordinance be repealed or that an election be called. It was not stipulated that the petition was in all re-

spects in compliance with the statute but only that it was an instrument bearing the signatures of more than ten per cent of the legal voters. The statute provides how the petition shall be signed, how it shall be verified, and its form. The objections to the petition covered these various provisions and the decree found that the petition did not comply with the statute. The validity of the petition was tested by the method provided by law. The decree finding it invalid was not subject to collateral attack and it relieved the city council of the duty of repealing the ordinance or submitting it to a vote of the people.

Appellants contend that the ordinance is unconstitutional, unreasonable, illegal and void; that a city has no inherent right to license or tax an occupation, privilege or the right to use its streets; that statutes granting powers to cities are strictly construed, and if there is reasonable doubt as to their existence such doubt will be resolved against the city; that the ordinance seeks to impose a tax and is not a regulatory measure; that the scale of fees does not comply with the statute; that there is no regulation of the load to be carried, the size, weight, power or cost of the vehicles, the width of the tires or the method of using the vehicle; that pleasure cars are taxed a fixed amount in one class regardless of their size, weight, cost, motive power or capacity, and buses are placed in another class, thus making a discrimination against people in the same class owning vehicles of different sizes and capacities; that dealers in automobiles are taxed $20 and are relieved from further charges, thus favoring such dealers; that an excessive fee is charged for vehicles used for hauling; that the ordinance improperly imposes a penalty of not less than $5 nor more than $100 for each offense, and each day a vehicle is used without a license constitutes a separate offense.

Clause 96 of paragraph 65 of chapter 24 (Cahill's Stat. 1927, p. 316,) authorizes cities and villages to direct, license and control all wagons or other vehicles conveying loads

within a city, or any particular class of such wagons or other vehicles, and prescribe the width and tires of the same, and the license fee is to be kept in a separate fund and used only for paying the costs and expenses of street and alley improvement and repair. Sections 1034 and 1035 of chapter 24 (Cahill's Stat. 1927, p. 528,) are substantially to the same effect. Section 26 of chapter 95a of the Motor Vehicle act, (Cahill's Stat. 1927, p. 1717,) with certain limitations, authorizes cities and villages to license motor vehicles. The validity of ordinances passed under these various sections has been before this court on many occasions, and the law is well settled that cities and villages have a right to license vehicles using their streets when the authority is conferred by statute and the ordinance passed is in conformity with the statute. (*Roe* v. *City of Jacksonville,* 319 Ill. 215; *Westfall Storage Co.* v. *City of Chicago,* 280 id. 318; *Heartt* v. *Village of Downers Grove,* 278 id. 92; *City of Lincoln* v. *Dehner,* 268 id. 175; *Ayres* v. *City of Chicago,* 239 id. 237; *Harder's Storage Co.* v. *City of Chicago,* 235 id. 58.) There have been various provisions of the statute considered in the decisions above cited, but under the statute as it existed at the time the ordinance in question was passed there can be no doubt of the authority of the municipality to pass an ordinance imposing a license on vehicles using its streets.

The ordinance divided all vehicles into fifteen classes. Horse-drawn vehicles are divided into six classes, including those using one horse and those using two horses, those used for pleasure, and those used for hauling and transportation. Motor vehicles are divided into nine classes, including motorcycles, automobiles used for pleasure, for delivery of one ton or less, those for delivery of one ton or more, trailers of one ton or less, trailers of more than one ton, automobiles used for public hire for transporting passengers, motor hearses, funeral limousines, tractors with rubber tires and those not so equipped. Each class has a

specified rate for that class, except that motor vehicles for conveying loads of more than one ton are charged at the rate of $10, plus $2.50 per ton for each ton or a fraction thereof over one ton. Those of one ton or less have a rate of $2.50. A dealer in motor vehicles holding a State dealer's license and State registration certificate may obtain a license for $20 to cover all motor vehicles owned by him and is not required to display a city license upon any motor upon which is displayed a State license. Every person, firm or corporation using a fleet of two or more horse-drawn or motor vehicles for hauling in the business of the person, firm or corporation, or for hire, may obtain a license upon the payment of $20 for the first two vehicles and $2 for each additional vehicle. All revenue derived from licenses is to be kept in a separate fund and used for the paving and repairing of streets and alleys.

Even though the municipality, under authority of the statute, may have had the power to make other classifications and distinctions between vehicles of the same class as to carrying and motive power other than those provided by the ordinance, yet the failure so to do did not render the ordinance unreasonable or unconstitutional, provided the classification and the rates charged were reasonable, were authorized by the statute and all persons within the class were treated alike. Before a court will override the judgment of a legislative body it must clearly appear that the judgment of such body is erroneous or that the discretion vested in the municipal authorities has been abused. A court will not hold an ordinance void and unreasonable where there is room for a fair difference of opinion upon the question, even though the correctness of the legislative judgment may be doubtful and the court may regard the ordinance as not the best which might be adopted for the purpose. (*Klever Karpet Kleaners* v. *City of Chicago*, 323 Ill. 368; *Hartman* v. *City of Chicago*, 282 id. 511; *City of Chicago* v. *Mandel Bros.* 264 id. 206.) The classi-

fication as provided in the ordinance was not unreasonable, it did not violate any constitutional provision, and the decree was not erroneous in so finding.

The ordinance provided for a fine of not less than $5 nor more than $100 for each violation, and each day a vehicle was used without a license constituted a separate offense. Section 1035 of the Cities and Villages act (Cahill's Stat. 1927, p. 529,) provides that no fine or penalty imposed by the ordinance shall exceed $200 and no imprisonment shall exceed six months for one offense. The penalty imposed by the ordinance was within the provisions of the statute. In *Harder's Storage Co.* v. *City of Chicago, supra,* the ordinance provided that each day any vehicle was used without a license should constitute a separate offense. The question of the validity of that provision was not directly raised on the appeal but other objections to the ordinance were made, and it was held that the ordinance did not violate any constitutional provision and that it was not unreasonable.

Appellants insist that the ordinance was not published in the official newspaper of the city. It is admitted that the *Paris Daily News* was selected as the official newspaper of the city in May, 1923. The statute does not require each council to select an official newspaper, and the paper selected will continue as the official newspaper until another selection is made. The ordinance was duly published.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*